# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALLEN MARTIN**                                                    **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                                    **NO. 16-266-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 13, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ALLEN MARTIN                                        CIVIL ACTION

VERSUS

DARREL VANNOY, ET AL.                              NO. 16-266-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Allen Martin, challenges his conviction, entered in the Twenty-First Judicial District Court for the Parish of Livingston, State of Louisiana, on one count of aggravated rape, one count of kidnapping, one count of armed robbery and one count of aggravated burglary. The petitioner contends that he was provided with ineffective assistance at trial.[1]

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Martin,* 12-1024 (La. App. 1 Cir. 2/15/13), 2013 WL 595922), are as follows: The victim, J.L. testified at trial. On February 12, 2011, she lived alone in an apartment off of Montpelier Road in Albany. At approximately 7:30 p.m. on that date, she went to her apartment to get dressed for a birthday party in Hammond. She entered her apartment, locked the door, and began taking a shower. Approximately five to ten minutes later, she heard a noise. She looked around her shower curtain and saw the petitioner standing in the bathroom. He stated, "Jacquelyn," and the victim answered, "No." He then left the bathroom. The victim closed the shower curtain "trying to figure out what just happened." A few seconds later, the petitioner pulled back the

---

[1] The Court has assigned its own claim numbers and subparts to the petitioner's claims.

shower curtain.  He had a knife in his hand.  The victim jumped out of the shower and grabbed the

petitioner's wrist holding the knife with one of her hands and his throat with her other hand, pushed

him against the door, and ran toward a gun on the floor near her bed.  The victim was unable to

release the safety of the gun before the petitioner began struggling with her for the weapon.  She

stopped struggling for the weapon after he pointed the gun at her.

The petitioner stood up, pointed the gun at the victim's head, and walked toward the front of the

apartment.  The victim ran to the bedroom door and closed and locked the door.  She then ran and

got her cell phone off the bathroom counter and dialed 911.  The petitioner forced open the

bedroom door and "grabbed" the cell phone from the victim.  He asked her who she was calling,

and she replied, "Nobody."  The cell phone then rang, but the petitioner did not answer the call. He

pointed the gun at the victim and "walked [her] over to the bed."  He asked if she lived alone, and

she answered affirmatively.  She asked what he wanted, but he did not answer.  When asked at trial

whether the petitioner still had the knife, the victim answered affirmatively, and stated "I believe he

had it in his back pocket, and then later put it on top of my bed frame."

Thereafter, the petitioner pointed the gun at the victim's forehead and told her to give him

oral sex.  She complied.  The petitioner then pushed the victim onto the bed, pointed the gun at her

head, and had vaginal sex with her.  He pushed the gun against the temple of the victim's head, and

laughed when it left a mark on her head.  He then sat up, pointed the gun at the victim's head, and

switched the safety on and off, pulling the trigger when the safety was on.  He asked the victim if

she wanted to die.  She answered negatively.  He pulled the knife from his back pocket, put it

against the victim's throat, and slid it across the side of her face.  He asked her if she wanted him to

cut her face off, and told her he had seen that done in a movie.  He also asked her how far away her

parents lived.  She replied approximately forty-five minutes away, and he stated, "So it would be

like 45 minutes before they could get here and identify the body?"  The petitioner then had vaginal sex with the victim while holding the gun to her head.  He told her he was going to have to kill her because she had seen his face.  He put a pillow over her face and told her it would make a good silencer.  The victim heard him turning the safety on the gun on and off.  Thereafter, the petitioner removed the pillow from the victim's face and told her she was "too pretty to kill."  He then put the gun inside the victim's vagina.  He asked her what she thought it would feel like if he shot her like that.  She replied she would probably die.  He then forced her at gunpoint to go to the bathroom and put her head over the toilet, stating it would not be "as messy."  He released the safety from the gun and started to count down from 4.  After he counted down to 1, he stated he did not know if he would be able to "do it."

The petitioner then forced the victim back to the bed and forced her to get "on top of him." He told her "[the victim's] job was to get him off."  He also forced the victim to put his penis in her anus.  Thereafter, he told the victim he didn't know whether to kill her or take her with him.  The victim asked the petitioner to let her go.  He told her he could not do that.  He ordered the victim to text her friends that she "wasn't going to be able to make it."  The petitioner then called his pastor and told him that he "had this girl held up at gun point, and that he didn't know what he should do."

Next, the petitioner forced the victim at gunpoint into the kitchen and gave her some vodka and orange juice to drink, while he drank orange juice.  He then forced her back into the bedroom. The petitioner told that the victim he had tried to stab his stepfather and had a teardrop tattoo on his face because he had paralyzed someone.  He also told her he lived at the rent house across from her apartment.  The victim began crying, and the petitioner said he was sorry he had "put [the victim] through this."  He then had vaginal sex with her while holding the gun in his hand.  He also had anal sex with her.  Additionally, he forced her to give him oral sex.  He forced the victim's head onto his

penis so hard that she vomited.  The victim went into the bathroom, vomited again, and rinsed her mouth with water.  When she came back into the bedroom, the petitioner forced her to bend over the bed and had anal sex with her.  He then had vaginal sex with her.  The petitioner ejaculated and told the victim to take a shower "to get his DNA out from inside of [the victim]."

Thereafter, the petitioner told the victim to get dressed.  He looked through the victim's purse and asked her if she had any jewelry of any value.  He told her he was going to need money to get out of the state "after raping and kidnap."  The victim told the petitioner she did not have anything, but they could go to the ATM.  Thereafter, while armed with his knife and the gun, the petitioner drove the victim to the ATM in her vehicle.  He brought extra ammunition for the gun "in case he got into a shoot out with the cops."  The victim testified that she gave the petitioner $300 from the ATM because he "asked for it, and [the victim] was trying to cooperate."  The petitioner stood ten feet away from her as she used the ATM.  She believed he had the gun in his hand.  She testified she did not try to run because, she "didn't know how well or if [defendant] could shoot," and she knew she could not "run faster than a bullet."

The petitioner was apprehended after a Louisiana State Trooper stopped the victim's vehicle for a broken taillight.  The victim immediately told the trooper she had been raped and kidnapped.

In a February 13, 2011 recorded statement, the petitioner claimed that he had consensual sex with the victim and that she loaned him the money from the ATM.  In a February 16, 2011 recorded statement, the petitioner claimed he went into the victim's unlocked apartment and took her gun from her because she was going to shoot him.  He claimed he kept his knife in his pocket.  He indicated he put the gun to the victim's head and approximately five or ten minutes later they had sex.  He continued to claim the victim loaned him the money from the ATM.  He denied putting the gun inside the victim's vagina.

## Procedural History

After a trial by jury conducted in March of 2012, the petitioner was found guilty of aggravated rape, aggravated kidnapping, aggravated robbery and aggravated burglary.  On April 3, 2012, the petitioner was sentenced.

The petitioner subsequently filed a counseled appeal.  On February 15, 2013, the petitioner's convictions were affirmed by the appellate court.[2]  *See State v. Martin,* 12-1024 (La. App. 1 Cir. 2/15/13), 2013 WL 595922.  Writs were denied by the Louisiana Supreme Court on October 11, 2013.  *See State v. Martin,* 13-0589 (La. 10/11/13), 123 So.3d 1214.  The petitioner thereafter filed an application for post-conviction relief, which was denied by the trial court on August 11, 2014.  Writs were denied by the appellate court and the Louisiana Supreme Court on November 3, 2014 and October 2, 2015, respectively.  *See State v. Brown,* 14-1383 (La. App. 1 Cir. 11/31/14), 2014 WL 12570068 and *State ex. Rel. Martin v. State,* 14-2526 (La. 10/2/15), 178 So.3d 585.  The instant application for habeas corpus relief was filed in this Court on April 21, 2016.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than

---

[2] Petitioner's sentence on Count IV was vacated and remanded as it was deemed to be an indeterminate sentence.  The remaining sentences were all affirmed.

the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

## Substantive Review

### Claim 1:  Failure to Appoint Counsel and Conduct an Evidentiary Hearing

The petitioner asserts that the trial court erred in failing to appoint counsel and conduct an evidentiary hearing during the petitioner's post-conviction proceeding. This claim is without merit. There is no right to counsel on collateral review. *See Shank v. Vannoy,* 2017 WL 6029846 (5th Cir. 2017), *citing Coleman v. Thompson*, 501 U.S. 722, 755-57 (1991).

Additionally, the petitioner's claim regarding the trial court's failure to conduct an evidentiary hearing is not cognizable in a federal habeas proceeding. Louisiana Code of Criminal Procedure article 929 provides that the trial court may grant or deny relief without further proceedings if the court determines that the factual and legal issues can be resolved based upon the application, the answer, and supporting documents. Claims that a state court improperly applied

state law do not constitute an independent basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991); and *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996), *cert. denied,* 520 U.S. 1242 (1997) (finding that asserted violations of state law are no basis for federal habeas relief). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley,* 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).

The petitioner has not identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation, and the denial of the requested relief by the trial court was not contrary to, or an unreasonable application of, Supreme Court precedent. For the foregoing reasons, the petitioner is not entitled to relief on this claim.

### Claim 2: Ineffective Assistance of Trial Counsel

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged

action might be considered sound trial strategy.  *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter*, *supra*, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington*, *supra*, 466 U.S. at 693.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter*, *supra*, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  The above showing is one that the petitioner cannot make in the instant case.

### Claims 2(a) and 2(b):  Failure to Investigate and Interview and Call Witnesses

The petitioner asserts that his trial counsel was ineffective for failing to investigate and interview and call witnesses.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland,* 466 U.S. at 691.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989). To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007).

In the instant matter, the petitioner fails to indicate what information his attorney may have obtained through further investigation or through interviewing witnesses (none of whom have been identified by the petitioner). In the absence of information provided by the petitioner as to what further investigation may have disclosed or as to the identity of witnesses who were not adequately interviewed, this claim is clearly without merit.

### Claim 2(c):  Failure to Conduct Adequate Discovery

The petitioner alleges that his trial counsel was ineffective for failing to engage in adequate pre-trial discovery. Specifically, the petitioner alleges that his counsel failed to request the results of any testing performed on the petitioner's clothing. As noted by the trial court, the petitioner's counsel engaged in extensive pre-trial discovery. Furthermore, based upon the record before the Court, it does not appear that the petitioner's clothing was collected for testing. As such, the petitioner's claim is without merit.

### Claim 2(d):  Failure to Request a Sanity Commission

The petitioner alleges that his trial counsel was ineffective for failing to request a sanity commission to assess his capacity to understand the proceedings against him and his sanity at the time of the offense.  The petitioner presents no evidence that he was actually incompetent to stand trial or was not sane at the time of the offense.  Rather he states in a conclusory fashion that he suffers from mental illness, specifically psychosis.  There is nothing in the record to indicate the petitioner's demeanor before counsel or the Court was ever questionable.  Accordingly, the failure of the petitioner's trial counsel to file a frivolous request for examination by a sanity commission was neither deficient nor prejudicial.  *See Mays v. Stephens,* 757 F.3d 211, 216 (5th Cir. 2014).[3]

### Claim 2(e):  Failure to Present a Defense

The petitioner alleges that his counsel was ineffective for failing to present a defense.  A review of the record reveals that the defense presented at trial was that of a consensual sexual encounter between former neighbors.  Considering that the petitioner admitted to having sexual intercourse with J.L. and was apprehended in her presence, it is unclear what other defense could have been presented.  The petitioner has shown neither deficient performance nor prejudice with regards to this claim.

### Claim 2(f):  Failure to Retain an Independent Expert

The petitioner asserts that his trial counsel was ineffective for failing to hire an independent expert.  In the absence of any assertion as to what testimony an expert witness would have presented at trial, the Court cannot find that counsel was ineffective on this ground or that the petitioner suffered any prejudice due to his trial counsel's failure to retain an expert.

---

[3] Even if petitioner had some diagnosed mental illness, that is not sufficient to determine incompetency.  The Court in *Mays* noted, "The two are not coextensive: A defendant can be both mentally ill and competent to stand trial. *Mays*, 757 F.3d at 216.

## Claim 2(g):  Failure to Seek Writs

The petitioner asserts that his trial counsel was ineffective for failing to seek writs when necessary.  The petitioner has not alleged any facts in support this claim or any particular adverse ruling by the trial judge.  In the absence of the same, the Court cannot find that counsel was ineffective on this ground or that the petitioner suffered any prejudice due to his trial counsel's alleged failure.

## Claim 2(h):  Failure to File Motions

The petitioner alleges that his counsel was ineffective for failing to file a motion regarding misjoinder of offenses and a motion to suppress.  Regarding joinder of offenses, Louisiana Code of Criminal Procedure article 493 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

To the extent that petitioner is claiming that the various offenses in the instant case were not sufficiently related to be joined, he is incorrect.  The Louisiana Supreme Court has noted that offenses which arise from the same "crime spree" are properly joined when they are "closely related in point of time and basically ar[i]se out of one continuing transaction." *State v. Webb,* 364 So.2d 984, 989 (La.1978).  That is clearly the case here, where the various offenses were committed in continuous succession over the course of a few hours.  Additionally, all offenses were triable by the same mode of trial.  As such, this claim is without merit.

With regards to his trial counsel's failure to file a motion to suppress, the petitioner cites no authority to show that his trial counsel had a legal or factual basis upon which to pursue a motion to suppress.  As such, the petitioner's claim of ineffective assistance of counsel is without merit.

## Claim 2(i):  Failure to Impeach

The petitioner alleges that his trial counsel was ineffective for failing to impeach and otherwise discredit the testimony of J.L. and State Trooper Dupree.  J.L. testified that she vomited when she was forced to perform oral sex by the petitioner.  On cross-examination, J.L. testified that she vomited on the petitioner's clothing.  In an attempt to discredit J.L.'s testimony, the petitioner's trial counsel elicited testimony from Sergeant Finn that the petitioner's clothing was not wet when he was patted down, and from Detective Harrell that no bodily fluids were observed on the bedroom floor.

Trooper Dupree testified that after he unsuccessfully attempted to verify the petitioner's identify, he approached the passenger side of the vehicle.  J.L. then exited the vehicle and informed Trooper Dupree that she had been raped and kidnapped by the petitioner.  This testimony is consistent with the Trooper Dupree's written statement made during the investigation.

As such, the petitioner has failed to identify any impeachable testimony.  Even if this Court were to assume that the petitioner's counsel was deficient as alleged by the petitioner, the petitioner has not shown a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## Claim 2(j):  Deprivation of Right to Testify at Trial

The petitioner asserts that he was deprived of his constitutional right to testify at trial because his attorney refused to allow him to testify.  With regard to whether an attorney has rendered deficient performance by interfering with a petitioner's right to testify, the courts have recognized that an attorney's decision not to call a criminal defendant to testify is normally "part of counsel's trial strategy" and is a "judgment call which should not easily be condemned with the benefit of hindsight."  *See United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).  In the

instant case, in light of the petitioner's inconsistent and inculpatory statements made during the investigation of this matter, the Court is unable to conclude that it was deficient conduct to advise the petitioner not to testify.  At the same time, however, the petitioner contends in the instant case that his attorney refused to allow him to testify, notwithstanding a stated wish to do so, and "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice."  *Id.*

However, the petitioner's assertions are conclusory in this regard, and there is nothing in the record to support it beyond the petitioner's mere assertion to that effect. A habeas petitioner in this context has the burden of proving that he was denied this constitutional right, and it is not enough to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him from doing so.  *See Reed v. Cain*, 2014 WL 2050613, *9-10 (E.D. La. Sept. 2, 2014); *Turcios v. Dretke*, 2005 WL 3263918, *6 (S.D. Tex. Nov. 29, 2005), *citing Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991).  In *Underwood*, the Seventh Circuit specifically noted the potential problems likely to arise if habeas petitioners making similar arguments were not required to satisfy the burden of proof.  *Id.* at 475.  The *Underwood* Court recognized that such assertions, even if made under oath, were inadequate to meet that burden:

> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id.* at 476.  Citing *Underwood*, the United States Court of Appeals for the Fifth Circuit has also indicated having the same concerns, noting that "Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).

Based on the foregoing, and the complete absence of any corroborating evidence in the record, this Court is unable to conclude that this claim has merit.  Even if the petitioner could establish that he was prevented from testifying at his criminal trial because of his attorney's deficient conduct, the petitioner would also need to establish that he was prejudiced as a result of the referenced deficiency.  *See United States v. Mullins, supra*, 315 F.3d at 456 (finding that although Petitioner's attorney in fact prevented Petitioner from testifying at trial, Petitioner could show no prejudice resulting from the attorney's deficient conduct).  *See also Bell v. Quarterman*, 330 F. App'x. 492 (5th Cir. 2009); *Graham v. Roberts*, 96 F.3d 1445 (5th Cir. 1996).  In light of the overwhelming evidence of Petitioner's guilt in this case,  there is little basis for concluding either that had the petitioner testified, the result of the proceeding would have been different, or that the petitioner's counsel's alleged errors were such as to undermine confidence in the outcome.  Further, the petitioner has provided no information whatsoever regarding what his testimony would have been or how it might have favorably influenced the jury.  Accordingly, the Court finds that Petitioner is unable to show prejudice resulting from his attorney's alleged deficient conduct, and this claim is without merit.

### *Claim 3: Totality of Errors*

The petitioner asserts in Claim 3 that the cumulative effect of the foregoing alleged errors by his counsel and the state trial court denied him a fair trial.  Federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial when: (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and, (3) the errors so infected the entire trial that the resulting conviction violates due process.  *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir. 1995), *quoting, Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992).

The cumulative errors doctrine provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness. *Spence v. Johnson,* 80 F.3d 989, 1000 (5th Cir. 1996). Insofar as the petitioner asserts a "cumulative error" theory as a separate ground for relief, his argument is foreclosed by the Fifth Circuit's opinion in *Derden* and its progeny. In order to satisfy the cumulative error rule in the Fifth Circuit, the petitioner must show that: (1) the state trial court actually committed errors; (2) the errors are not procedurally barred; (3) the errors rise to the level of constitutional deprivations; and (4) the record as a whole reveals that an unfair trial resulted from the errors. *Derden v. McNeel,* 978 F.2d at 1458.

For the reasons set forth in the analysis above, none of the alleged errors identified by petitioner rise to the level of a violation of the petitioner's constitutional rights. Additionally, review of the record of the petitioner's trial, as a whole, reveals that the petitioner was not denied a fair trial. The petitioner's cumulative errors ground for relief is without merit.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th

Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court

finds that reasonable jurists would not debate the denial of defendant's application or the

correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that the

petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and

that this proceeding be dismissed.  It is further recommended that in the event the petitioner pursues

an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on June 13, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**